## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD BALDWIN, | |
| Plaintiff, | CIVIL ACTION NO. 3:22-cv-01327 |
| v. | (SAPORITO, J.) |
| SCHUYLKILL AUTO SALES, LLC d/b/a SKOOK AUTO SALES, | |
| Defendant. | |

### <u>MEMORANDUM</u>

This civil action commenced on August 24, 2022, when the plaintiff, Richard Baldwin, filed the original complaint in this matter against his former employer, Schuylkill Auto Sales, LLC d/b/a Skook Auto Sales ("Skook Auto"). In his amended complaint, Baldwin claims that his former employer discriminated against him because of his disabilities and age by discharging him from employment, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 42 P.S. § 951 *et seq.* (Doc. 33.) He further claims that this same conduct constituted retaliation in violation of the ADA and PHRA. (*Id.*)

Presently before the Court is Skook Auto's motion for summary judgment. (Doc. 38.) The motion is fully briefed and ripe for decision. (Doc. 38; Doc. 39; Doc. 40.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion,"

and demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must set forth specific facts, supported by the record, demonstrating that "the evidence presents a sufficient disagreement to require submission to the jury." *Anderson*, 477 U.S. at 251–52.

In evaluating a motion for summary judgment, the Court must first determine if the moving party has made a prima facie showing that it is entitled to summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331. Only once that prima facie showing has been made does the burden shift to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 331.

Both parties may cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers or other materials." Fed. R. Civ. P. 56(c)(1)(A). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set

out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial." *Bender v. Norfolk S. Corp.*, 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014); *see also Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n.13 (3d Cir. 1999) (noting that it is not proper, on summary judgment, to consider evidence that is not admissible at trial).

## II.  MATERIAL FACTS[1]

Plaintiff Richard Baldwin, who is currently sixty-eight years old, had a career as a mechanic and service station manager. Baldwin has

---

[1] In compliance with Local Rule 56.1, Skook Auto's motion for summary judgment is "accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." (Doc. 38-3.) M.D. Pa. L.R. 56.1. Moreover, each factual statement presented by Skook Auto in support of its motion for summary judgment "include[s] references to the parts of the record that support the statements." *Id.*; *see also* Fed. R. Civ. P. 56(c)(1).

A party opposing summary judgment is likewise required by the local rules to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs" in the movant's statement of material facts, which must similarly "include references to the parts of the record that support the statements." M.D. Pa. L.R. 56.1.

Here, the non-moving party, Baldwin, has filed the requisite *(continued on next page)*

responsive statement of material facts, responding to the numbered paragraphs of the moving defendant Skook Auto's statement of material facts. (Doc. 39-2.) But in addition to his responses to Skook Auto's 72 separately numbered factual statements, Baldwin has submitted an additional 70 numbered paragraphs with supplemental factual statements that do not respond to Skook Auto's statement of material facts. (Doc. 39-1, at 1–13.)

The local rules do not permit a non-moving party to file *additional* factual statements that do not respond to the movant's statement, and such non-responsive factual statements may be stricken or disregarded. *See Farmer v. Decker*, 353 F. Supp. 3d 342, 347 n.1 (M.D. Pa. 2018) (disregarding non-movant's additional statement of facts for non-compliance with Local Rule 56.1); *Barber v. Subway*, 131 F. Supp. 3d 321, 322 n.1 (M.D. Pa. 2015) (declining to consider separate counter-statement of facts that was non-responsive to the movant's statement because it was "neither contemplated nor permitted by the Local Rules"); *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (upholding district court decision to strike non-movant's non-responsive counter-statement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 64, 613–14 (3d Cir. 2018) (upholding district court decision to strike non-responsive paragraphs from non-movant's answer to movant's statement of material facts under Local Rule 56.1).

The court may nevertheless consider such non-responsive factual statements in the exercise of its discretion. *See Rau*, 793 F. App'x at 87; *Loving v. FedEx Freight, Inc.*, Civil Action No. 3:18-CV-508, 2020 WL 2306901, at *1 n.1 (M.D. Pa. May 8, 2020); *Bashore v. Pocono Mountain Reg'l Police Comm'n*, Civil Action No. 3:18-CV-425, 2020 WL 1330649, at *1 n.1 (M.D. Pa. Mar. 23, 2020); *cf.* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). Here, we have considered these additional non-responsive factual statements (Doc. 39-1, at 1–13), but only because the Skook Auto has responded to each of them in corresponding numbered paragraphs (Doc. 40). *See Loving*, 2020 WL 2306901, at *1 n.1; *Bashore*, 2020 WL 1330649, at *1 n.1.

several disabilities related to his ears and throat, including the inability to hear high frequency sounds in one ear, and the inability to hear low frequency sounds in the other. He has had this disability since approximately 2005, and wears hearing aids. He also has a condition known as "jackhammer and corkscrew" esophagus, which affects his ability to swallow and eat food. While he has always had issues swallowing, he was not diagnosed with the condition until approximately 2021.[2]

Defendant Skook Auto is a used car dealership and service center located in Schuylkill Haven, Pennsylvania. In 2015, Skook Auto hired Baldwin, then fifty-nine years old, through a program with the Pennsylvania Department of Labor and Industry's Office of Vocational Rehabilitation ("OVR"), which provides vocational rehabilitation services to help persons with disabilities prepare for, obtain, or maintain employment. Skook Auto hired Baldwin as a service advisor at a rate of $17.00 per hour, which it increased to $18.00 per hour through OVR. Because Baldwin was hired through OVR, Skook Auto was aware he was

---

[2] In its statement of material facts, Skook Auto asserts that Baldwin has never provided medical documentation supporting this diagnosis.

disabled. During his on-the-job training period, OVR paid Baldwin the $18.00 per hour rate. The responsibilities of service advisor included ordering parts from vendors, scheduling appointments for customers, communicating with customers regarding services for their vehicles, prioritizing repair orders, and submitting warranty claims.

Skook Auto's current co-owner, Gerald Shappell, was the general manager of the business at the time of Baldwin's hiring and part of the hiring team. At that time, Skook Auto did not ask any questions about his disabilities, nor did Baldwin request any accommodations.[3] During the six and a half years Baldwin worked as a service advisor, from October 2015 to January 2022, he asked for three accommodations, a headset for the telephone, "a little extra time to eat" due to his throat condition, and time off for doctor's appointments. Baldwin did not receive the headset but testified that he did not think "it would be a big improvement" and instead he would tell the service technicians in the garage to talk more quietly so he could hear customers on the phone.

---

[3] In his response, Baldwin asserts that he requested the ability to miss work to attend doctor's appointments. Although this request was granted, there are disputes about whether the leave was paid and whether Baldwin was retaliated against for missing work due to these appointments.

Baldwin's accommodation for more time to eat was granted, as were his requests to take time off.[4]

At some point during his employment with Skook Auto, Baldwin began documenting incidents of alleged discrimination in a notepad.[5] On July 29, 2019, a colleague asked Baldwin when he was going to retire, to which Baldwin responded, "hopefully never."[6] On January 3, 2020, a colleague asked Baldwin if he planned to retire soon, to which Baldwin responded that he wanted to wait until he was seventy-two years or older. On February 1, 2021, Baldwin and the former owner of Skook Auto,

---

[4] In its statement of material facts, Skook Auto asserts that Baldwin's time off to attend doctor's appointments was paid. In his response, Baldwin asserts that it was not paid time off. Further, Baldwin testified that he "would have to check and see" if Skook Auto ever denied him the right to go to a doctor's appointment, but that he believed he had to reschedule some appointments "because someone else was off or something else was going on." He further asserts that the service manager and his boss, Michael Kutz, would sometimes allow his work to pile up when he went to doctor's appointments and would show frustration or ignore him when he returned. He also testified that Kutz would assist him with the work that would pile up while he was away.

[5] In its statement of material facts, Skook Auto asserts that Baldwin began documenting incidents in a notebook in 2019. In his response, Baldwin denies this assertion because Skook Auto does not cite to any evidence that this was the beginning date.

[6] In his response, Baldwin admits to each of the following incidents documented in his notepad, adding that he testified to even more examples during his deposition.

Wayne Herring, discussed the benefits of going onto Medicare. Herring gave Baldwin the company that he used for his own Medicare coverage, and instructed Baldwin to speak with Skook Auto's controller if he decided to proceed with Medicare, because Skook Auto would reimburse him if the cost was less than his current company healthcare. On June 29, 2021, Baldwin's direct supervisor Kutz, informed Baldwin that he and Shappell were buying Skook Auto and were hiring thirty-four-year-old Chris Ebling to replace Kutz. On September 13, 2021, Ebling began the job as service manager, and took Kutz's desk, while Baldwin remained at the front service advisor desk.

On October 15, 2021, Kutz and some Skook Auto technicians were discussing financial retirement accounts, and Kutz asked Baldwin what age permitted an individual to collect "full retirement."[7] Kutz stated that he would not get his "full rate" until he was eighty. Baldwin responded that he would receive his "full rate" at age sixty-six, enabling him to collect benefits and continue working without penalty.

At some point in fall 2021, Baldwin informed Kutz and Shappell

---

[7] While unclear, it appears that the individuals were discussing social security benefits.

that he would potentially need throat surgery. Baldwin believes that he told Shappell and Kutz that he "may" need throat surgery in fall 2021. He testified that he told them "it looked like it was going to be imminent," but did not provide a date because no surgery was scheduled, and that Shappell responded "Just keep us informed."

On December 29, 2021, Baldwin met with Kutz and Shappell in Shappell's office. Shappell stated that he did not want to "sugar coat this" but that Skook Auto was laying him off, that he was good at his job, and that "times are tough." Kutz told Baldwin that he can "collect social security" and Shappell told him that he can collect unemployment. They promised Baldwin that Skook Auto would pay for all his unused vacation time and let him work until the end of January 2022 at his regular pay.

On January 25, 2022, Skook Auto reimbursed Baldwin for his Medicare insurance. On January 28, 2022, Ebling mentioned to Baldwin about his "retirement." The same day, Baldwin asked Shappell about the layoff, inquiring whether it was because of his Medicare reimbursement, to which Shappell replied, "Absolutely not, that's peanuts." Baldwin asked if the layoff was due to his "start time" or his "doctor appointments," to which Shappell said "No." Shappell explained that it

was due to business circumstances and was a permanent layoff, and that he was "not happy" about it. Baldwin stated the layoff would not be good for his health. In an undated entry, Baldwin recalled an incident where an employee and Kutz told him to "turn his hearing aids up."

On January 31, 2022, an employee talked to Baldwin about his retirement, to which Baldwin indicated he was not retiring. The same day, Baldwin emailed Shappell and Kutz to confirm his reason for applying for unemployment should be "laid off due to financial reasons / lack of work," to inquire whether he would receive a positive reference, and to ask whether he would be hired back in the future.[8] In response, Shappell replied that the financial reasons and lack of work should be the reason for Baldwin's unemployment, that he would give Baldwin a good reference, and that Baldwin would be kept in mind "if things ever loosen up and we can breathe, and add on . . . ." Kutz also replied, stating that Baldwin would receive a good reference and "if something opens up we will call."

Skook Auto asserts that several individuals perform the duties of

---

[8] In his response, Baldwin admits only that Shappell and Kutz told him that his termination was due to financial reasons but asserts that this reason was pretextual.

Baldwin's position now, including Kutz, Brian Schultz, Tiffany Shaner, and Ebling, who replaced Kutz as service manager. Ebling primarily performs Baldwin's previous responsibilities, as Skook Auto eliminated the service advisor position. Both Shappell and Kutz testified that the reason for the lack of work was a change in the company's business model and the COVID-19 pandemic. Skook Auto's previous business model, known as "buy-here-pay-here," meant that it would finance the sale of its own vehicles rather than using a third-party lender, would itself collect the owed amounts, and would only service the cars it sold because the car owners were obligated to use the business for any necessary car repairs. In 2019, Skook Auto changed to using third-party lenders, and in combination with the COVID-19 pandemic, Skook Auto's accounts of vehicles it financed dropped from around 750 to around 280.[9]

---

[9] In his response, Baldwin asserts that the change in the number of accounts was due to a change in business model and not proportional to how profitable Skook Auto is, pointing to Shappell's testimony, in which he states the more accounts they have, the more expenses. Baldwin denies that anything other than the switch in business model contributed to the drop in Skook Auto's accounts. In support, he cites to Shappell's testimony:

Q: So part of the reason the collection accounts decreased so significantly at least initially was just the change in business model.

*(continued on next page)*

During his deposition, Kutz identified documents, calling them "the DMS," that would show the reduction in the number of accounts. These documents were produced during discovery. In Quarter One of 2019, the number of vehicles Skook Auto had to service was 740 and the receivables were over $6.7 million. By Quarter Four of 2021, that number dropped 59%, from 740 to 304, and receivables dropped by $4.6 million. By Quarter Four of 2022, the number of vehicles serviced dropped to 259.

During the period of 2018 until 2023, Skook Auto made several other cuts to its labor force.[10] In 2018, Ronald Suhr, a technician in his thirties, was brought to the service advisor desks to assist in service advisor duties. When Suhr left voluntarily in 2019, his position was not

_____

A: Correct.

Q: It wasn't due to outside effects; it wasn't due to a drop in business or anything like that?

A: Correct.

[10] In his response, Baldwin denies this assertion, noting that Skook Auto does not cite evidence in the record for this proposition and asserts that Baldwin was the only employee terminated in January 2022. However, in the subsequent numbered paragraphs of its statement of material facts, Skook Auto does cite to the record for specific examples of other adverse employment actions or its elimination of positions between 2018 and 2023.

replaced.[11] In 2019, Skook Auto dismissed Jennifer Swope, who was in her mid-thirties, and did not replace her position of "second full-time Vehicle Recon."[12] In 2020, Skook Auto dismissed Matthew Roehrig, who was thirty years old.[13] In fall of 2020, Skook Auto eliminated the position of "Second Collector," an employee who calls to collect from customers who owe payments on their vehicles, and now has only one collector. In early 2022, around the same time Baldwin was terminated, Skook Auto eliminated the position of "Title Clerk / Social Media" when that person voluntarily left, and the duties were absorbed by Shappell, Skook Auto's controller, and its vehicle recon person.[14] In 2023, Skook Auto dismissed

---

[11] In his response, Baldwin asserts that Suhr was employed as a mechanic and his position was never as a service advisor, and that Ebling replaced Baldwin, along with other staff who now perform Baldwin's previous service advisor duties.

[12] In his response, Baldwin admits this assertion, though notes that it is irrelevant, and that Swope was terminated for performance reasons.

[13] In his response, Baldwin asserts that this dismissal is irrelevant because it occurred before Kutz (or Shappell) were owners and was due to Roehrig "causing issues with other employees." Of note, while Baldwin only responds with the assertion that this dismissal was prior to Kutz and Shappell owning Skook Auto, it would similarly apply to any employee termination or position elimination prior to August 2021 when they became co-owners of the business.

[14] In his response, Baldwin admits that Skook Auto never hired another employee to work solely in the role as Title Clerk / Social Media but denies that it occurred around the same time Baldwin was

*(continued on next page)*

Ricky Barrineau, who was in his forties.[15]

In 2023, Skook Auto eliminated a salesperson position.[16] As of the

_____

terminated or that the position was eliminated because the duties of the position were absorbed by other employees.

[15] In his response, Baldwin admits the assertion, but notes that it is irrelevant because Barrineau was terminated "for an altercation with another employee."

[16] In his response, Baldwin asserts that Skook Auto "has hired multiple employees in sales positions since Mr. Baldwin's termination," and points to its own improperly filed statement of material facts, which in turn cites his own and Kutzs' depositions, neither of which support the assertion. Baldwin's citation to his own deposition states:

Q: Did you ever make any inquiry as to whether job [*sic*] was available through Schuylkill Auto Sales after you had left? Did you ever call?

A: I watched the paper and online on their website. They had sales positions open.

This testimony does not support the contention that Skook Auto hired multiple salespersons as asserted by Baldwin, only that it advertised for sales positions, which were not part of the service-side of the business where Baldwin worked. Further, Baldwin subsequently testified that he had no experience selling cars and was not licensed to sell cars.

The cited testimony of Kutz states:

Q: What was the reason for [Baldwin's] termination?

A: Money.

There is testimony from Ebling's deposition where he does state that Skook Auto hired three salespeople after February 2022, but that all voluntarily left and the positions were not replaced and in fact, another
*(continued on next page)*

filing of its brief in support of its motion for summary judgment, Skook Auto employs several people older than Baldwin, including an individual over the age of seventy who uses hearing aids.[17] Skook Auto also employed an individual whose leg was amputated.[18] Since Baldwin's termination in January 2022, Skook Auto went from twenty-three employees to eighteen employees, including two less full-time employees.[19]

---

non-sales employee assists the remaining salesperson.

[17] In his deposition testimony, Shappell points to one individual, Mark Croneburger, as being a full-time employee around or over the age of sixty, and Croneburger's wife, a part-time employee who is also in her sixties. He further testified that "I know we have several other employees that are older than 60; most of them are drivers." He further noted that drivers are part-time, and pointed specifically to John Mellillo, who is approximately seventy or seventy-five and wears bilateral hearing aids. In his response, Baldwin admits that Croneburger is around the same age as him, but denies that Skook Auto employs anyone with disabilities, pointing to Kutz's deposition where he testified that he was not aware if two specific individual employees were disabled.

[18] In its statement of material facts, Skook Auto cites Shappell's testimony that it employed a driver who was a "below the elbow amputee" and "was a leg amputee." In his response, Baldwin again cites to Kutz's deposition where he states he does not know whether two specific individual employees had disabilities.

[19] In its statement of material facts, Skook Auto cites to the depositions of Shappell and Kutz, who gave slightly differing numbers of employees. Kutz testified at the time of his deposition that Skook Auto had seventeen employees, but then stated it was thirteen full time and

*(continued on next page)*

## III.    DISCUSSION

Skook Auto has moved for summary judgment on each of Baldwin's claims under the ADA, ADEA, and PHRA.

### A. ADA and PHRA Disability Claims

In his amended complaint, Baldwin asserts two separate legal claims under the ADA, and two corresponding, parallel claims under the PHRA.[20] *See generally Salley v. Circuit City Stores, Inc.*, 160 F.3d 977, 979 n.1 (3d Cir. 1998) ("[A] claim under the PHRA is coextensive with a claim under the ADA."); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) (noting that "Pennsylvania courts . . . generally interpret the PHRA in accord with its federal counterparts"). First, Baldwin claims that Skook Auto subjected him to discriminatory treatment because of

_____

five part time employees, and that in January 2022, it had fifteen or sixteen full time and five part time employees. Shappell testified that the present number of employees was eighteen, down from twenty-three in May 2022. In his response, Baldwin cites Kutz's deposition testimony where he reviews Skook Auto reports indicating there were twenty-six employees in Quarter Four of 2021, twenty-three in Quarter One of 2022 when Baldwin was terminated, and twenty-six employees in the Quarter ending September 30, 2022, though Kutz notes that these may be part-time employees. Baldwin further asserts that employee wages went up after he was terminated.

[20] Baldwin asserts a third claim under the PHRA for age discrimination, which will be analyzed with his ADEA claim.

his disabilities and requests for reasonable accommodations. Second, Baldwin claims that Skook Auto retaliated against him because of those disabilities and requests for reasonable accommodations when it discharged him from employment.

We analyze Baldwin's discrimination and retaliation claims under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Fowler v. AT&T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021) (discrimination); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (retaliation). As summarized by the Supreme Court of the United States:

> Under *McDonnell Douglas*, a plaintiff must first establish a prima face case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. If the employer meets this burden, the presumption of intentional discrimination disappears, but the plaintiff can still prove disparate treatment by, for instance, offering evidence demonstrating that the employer's explanation is pretextual.

*Raytheon Co. v. Hernandez*, 540 U.S. 44, 49 n.3 (2003) (citations omitted).

To establish a prima face case of discrimination under the ADA, a plaintiff must establish that: (1) he was disabled; (2) he was otherwise qualified for the position at issue, with or without reasonable

accommodation; (3) he was subject to an adverse employment action; and (4) the adverse employment action was because of his disability. *See Fowler*, 19 F.4th at 299; *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). To establish a prima face case of retaliation under the ADA, a plaintiff must establish that: (1) he engaged in a protected activity, and the retaliator knew of the involvement; (2) adverse action was taken by the defendant either during or after the protected activity that was sufficient to deter a person of ordinary firmness from engaging in the protected activity; and (3) a causal connection between the protected activity and the adverse action. *Derrick F. v. Red Lion Area Sch. Dist.*, 586 F. Supp. 2d 282, 300 (M.D. Pa. 2008); *see also Shaner*, 203 F.3d at 500.

Here, the dispute between the parties boils down to an issue of causation. "Causation is required for both discrimination and retaliation claims under the ADA." *Emmell v. Phoenixville Hosp. Co.*, 303 F. Supp. 3d 314, 332 (E.D. Pa. 2018). "Close 'temporal proximity,' between the protected status or action by the employee and the adverse action by the employer, is suggestive but not determinative of causation." *Id.* (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000)); *see*

*also Quick v. GEO Grp., Inc.*, 2020 WL 532343, at \*17 (W.D. Pa. Feb. 3, 2020) ("There are two ways to establish a causal connection under the ADA: (1) where the temporal proximity of the alleged disability and the adverse employment action are 'unduly suggestive,' no other evidence is required; or (2) where the timing is not 'unusually suggestive,' but there is other evidence of discrimination or a 'pattern of antagonism.'") (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997)).

Baldwin argues he has established a prima facie case of both ADA discrimination and retaliation. Skook Auto only briefly references that Baldwin has not established a prima facie case in its brief, and the argument is not sufficiently developed for us to consider it. *N.J. Dep't of Envtl. Prot. v. Am. Thermoplastics Corp.*, 974 F.3d 486, 492 n.2 (3d Cir. 2020) (dismissing standing argument as vaguely asserted without legal or factual support). Instead, Skook Auto grounds its arguments on the fact that it had a legitimate, nondiscriminatory business reason for terminating Baldwin's employment, which Baldwin has not shown was pretextual.

Specifically, Skook Auto argues that its service business, where Baldwin worked as a service advisor, dropped from around 750 accounts

in 2019 to 304 accounts at the end of 2021, representing a drop in service work of 59% and $4.6 million in receivables. Eleven months after Baldwin was terminated, that number dropped to 259 accounts. This drop in business, due in part to a change in business model and the COVID-19 pandemic, combined with the fact that Shappell and Kutz just purchased the business in August 2021, necessitated a cut in costs, which resulted in Baldwin's termination and the elimination of his and other positions. We are satisfied that Skook Auto has provided evidence that this was a legitimate, nondiscriminatory reason for Baldwin's termination. Thus, the burden shifts back to Baldwin to demonstrate that this reason was pretextual.

Baldwin argues that "significant inconsistencies and contradictions" in Skook Auto's proffered reason for Baldwin's termination, including, (1) Skook Auto hired multiple sales employees after terminating Baldwin without considering him for a position; (2) Skook Auto expanded its service department; (3) Skook Auto had more employees in the Quarter Three of 2022, after Baldwin's termination; and (4) Skook Auto increased its remaining employees' wages following Baldwin's termination, constitute evidence of pretext regarding his

disability discrimination claims. Further, he contends that the temporal proximity between his protected activity, informing Shappell and Kutz of potential throat surgery, and his termination, and the alleged harassment from Kutz after missing work for doctor's appointments, is evidence of pretext.

We find that Baldwin has failed to raise a sufficient issue of material fact regarding the cause of his termination. The evidence of pretext that Baldwin points to is largely unsupported or mischaracterized from the record or does not undermine Skook Auto's proffered reason for his termination.

First, regarding the contention that Skook Auto hired multiple salespeople following Baldwin's termination is based on his deposition testimony that he saw advertisements for sales positions in the newspaper or on Skook Auto's website, not record evidence that Skook Auto actually hired anyone else. There is testimony from Ebling who states that Skook Auto hired three salespeople after February 2022, but that all voluntarily left the company, and that they were not replaced, with Skook Auto using another employee to fill in as a salesperson. This does not undermine Skook Auto's proffered reason for Baldwin's

termination. Rather, it appears to be an attempt to generate more business in a different department of the business than where Baldwin worked. Further, Baldwin testified that he had no experience selling cars and he did not have a license to sell cars, undermining any argument that Skook Auto did not rehire him due to his disability.

Second, regarding the contention that Skook Auto expanded its service department after terminating Baldwin, Kutz testified that they did not hire any new service employees, but that the expansion of the service department referred only to the business of servicing cars that were not sold and financed by Skook Auto, which previously, were the only cars the business serviced. Third, regarding the contention that Skook Auto hired more individuals, while true, is misleading because Kutz testified they were employed as part-time drivers. The wage reports in the record that Baldwin refers to as evidence of an increase in employee headcount show that eight employees were paid less than $1,000 for Quarter Three of 2022, belying his assertion that his termination for financial reasons was pretextual. Lastly, regarding the contention that Skook Auto increased employee wages, while again true, refers to the increase in employee wages between Quarter Two and

Quarter Four of 2022, at least nine months after Baldwin was terminated, and does not undermine Shappell's testimony that auto sales were down twenty percent since the pandemic.

We move to temporal proximity, where Baldwin argues he informed[21] Shappell and Kutz of prospective throat surgery and that "less than approximately two weeks later," he was terminated. The record does not support this argument. Baldwin's own deposition testimony states that he told Shappell and Kutz that he "may" need throat surgery in the future, but that nothing was scheduled, and he could only recall that this happened in fall 2021. Shappell recalled that this conversation was "maybe November" or "somewhere around" the "holiday" of 2021, but that Baldwin never requested to have this surgery while he was employed with Skook Auto. Thus, the temporal proximity of Baldwin informing Skook Auto of potential throat surgery and his termination is at best, inconclusive, but cannot be stated, even approximately, as occurring within two weeks of Baldwin's termination to bolster the argument it is

---

[21] From the record and the briefs, this appears to be the reasonable accommodation to which Baldwin hinges his retaliation claim, as his other requests, the headset, for extra time to eat, and for time off for medical appointments, were all granted, or in terms of the headset, Baldwin stated he did not actually need it.

unusually suggestive.

Next, Baldwin asserts that he experienced a pattern of discrimination, mostly by Kutz and Skook Auto technicians, who would tell him repeatedly to "turn up his hearing aids" and that when he left work for a doctor's appointment, Kutz would allow Baldwin's work to pile up on his desk and ignore him upon his return. In response to the question, "[w]ho made any discriminatory comments about your health," Baldwin testified, "Various. I mean, if a technician came in and I didn't hear them, [Kutz] would say, Rick, turn your hearing aids up." It is well-established, however, that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision. *See Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992); *see also Miller v. Berry Metal Co.*, 80 F. App'x 245, 248 (3d Cir. 2003) (holding that comments "likely made in jest" do not give rise to an inference of discrimination). Here, there is nothing in the record to indicate when these remarks were allegedly made or that the remarks

influenced the ultimate decision to terminate Baldwin,[22] or that the remarks were made with discriminatory intent. Further, regarding Baldwin's argument of work piling up when he left work for doctor's appointments, nothing in the record indicates that this was intentional, and Baldwin's own testimony belies this argument because he admitted it only happened after some appointments and that Kutz would assist him with the work.

Based on the foregoing, we find that Baldwin has not raised sufficient evidence of pretext to materially dispute that the causation of his termination was for legitimate business reasons or that he was discriminated against on the basis of his disabilities. Thus, Skook Auto's motion for summary judgement on Baldwin's ADA and PHRA disability discrimination and retaliation claims will be granted.

**B. ADEA and PHRA Age Discrimination Claims**

In the amended complaint, Baldwin raises a claim for age discrimination under the ADEA and a parallel age discrimination claim under the PHRA. *See generally Willis v. UPMC Children's Hosp. of*

---

[22] Kutz became a co-owner of Skook Auto in August 2021. Because there are no dates for these allegations, it is not clear whether Kutz was a decisionmaker at the time or not.

*Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) ("Since this Court has determined that the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA, we present a single analysis . . . ."); *Conners v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) ("There is no need to differentiate between . . . ADEA and PHRA claims because . . . the same analysis is used for both.").

The ADEA prohibits an employer from "discharge[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prevail on an ADEA claim, a plaintiff must establish by a preponderance of the evidence that age was the "but-for" cause of the adverse employment action. *Willis*, 808 F.3d at 644 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)) Like Baldwin's ADA claims, we analyze his age discrimination claims using the burden-shifting *McDonnell-Douglas* framework.

First, Baldwin must establish a prima-facie case of age discrimination. To do so, he must show that he: "(1) was a member of the protected class, *i.e.*, was over 40, (2) was qualified for the position, (3)

suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to infer an inference of age discrimination." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300 (3d Cir. 2004). To establish a prima facie case at summary judgment, "the evidence must be sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case." *Duffy v. Paper Magic Grp.*, 265 F.3d 163, 167 (3d Cir. 2001). As with Baldwin's ADA claims, Skook Auto does not sufficiently develop the argument that Baldwin did not establish a prima facie case of age discrimination, again grounding its argument that it had a legitimate, nondiscriminatory business reason for terminating his employment. In any event, we are satisfied that Baldwin presented sufficient evidence that he was (1) in his sixties, (2) qualified for the service advisor position, (3) terminated in January 2022, and (4) replaced by Ebling, who was thirty-four years old. Thus, Baldwin has established a prima facie case of age discrimination.

Skook Auto proffers the same reason, its severe drop in service work due to its business model change and the COVID-19 pandemic, as the reason that Baldwin was terminated from employment. Skook Auto notes that it eliminated or consolidated several other positions, including the

"vehicle recon" position, second collector, title clerk/social media, and sales positions in the period surrounding Baldwin's termination. We again find that Skook Auto has presented sufficient evidence of a legitimate, nondiscriminatory reason for Baldwin's termination. [23] Thus, Baldwin must present evidence that this reason was merely pretextual. While the issue is a close call, we find that Baldwin has raised a genuine dispute of material fact with respect to his age discrimination claims such that summary judgment is improper and a jury must decide.

Here, Baldwin argues he can show evidence of pretext because of the "continuous discriminatory treatment he was subjected to at the hands of his supervisor and termination decision-maker, Kutz." Specifically, evidence that Kutz made disparaging comments about Baldwin's age and questioned Baldwin about his retirement and social security benefits. On the day Baldwin was informed of his termination, Kutz even stated that Baldwin could begin collecting social security,

---

[23] While we acknowledge Skook Auto's proffered economic reasons for shrinking its labor force, it does not necessarily follow that the termination of employees, who happened to be younger than Baldwin, for performance issues or workplace conflict issues supports Skook Auto's position that it lacked discriminatory intent for his termination based on age.

raising an inference that Baldwin's age and ability to collect social security benefits were a consideration in his termination. Baldwin further argues that several people, including the younger Ebling who replaced him, customers, and third-party vendors made comments about his "retirement" despite Baldwin being terminated, raising yet another inference that Skook Auto's decisionmakers were actively telling these individuals that Baldwin had simply retired.

While Skook Auto argues that the evidence Baldwin points to as indicative of "continuous discriminatory treatment" appear to consist of innocent conversations about retirement benefits among employees, references to retirement remote from his termination, and references to his retirement from non-decisionmakers, Kutz was certainly a decisionmaker during the time that some of the references were made and the comments that Baldwin retired were in close temporal proximity to his termination. Further, we do not decide the credibility of the individuals making these statements nor can we construe them as innocent based only on transcripts and other documentary evidence. Those issues are for the factfinder. Further, whether the continuous comments from a decisionmaker can be construed as mere stray remarks

are better left for the factfinder's determination. Moreover, as is often the case in employment discrimination cases, direct evidence of causation is lacking, and we must rely on circumstantial evidence that discriminatory intent was the cause of an adverse employment decision. Accordingly, we find that the evidence presented by Baldwin is sufficient that a reasonable jury could find that the proffered reason for his termination was pretextual with respect to his age discrimination claims.[24]

## IV.    CONCLUSION

For the foregoing reasons, Skook Auto's motion for summary judgment will be granted in part and denied in part. Baldwin's claims for disability discrimination under the ADA and PHRA will be dismissed. His claims for age discrimination under the ADEA and PHRA will proceed to trial.

Dated: October 25, 2024            **_s/Joseph F. Saporito, Jr._**
                                   JOSEPH F. SAPORITO, JR.
                                   United States District Judge

---

[24] While Skook Auto retained several employees, both full-time and part-time, who were the same age or older than Baldwin, including Mark Croneburger, Croneburger's wife, and John Melillo, this does not bely Baldwin's assertion that he was particularly singled out for termination because of his age.